UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STONINGTON VINEYARDS, INC. et al. )<br>)<br>*Plaintiffs*, )<br>)<br>v.    )<br>)<br>EDDIE J. JENKINS, in his official capacity )<br>as Chairman of the Massachusetts Alcoholic )<br>Beverages Control Commission, )<br>)<br>*Defendants*. )<br>) | CIVIL ACTION No. 1:05cv-10982-JLT |

**WINE & SPIRITS WHOLESALERS OF MASSACHUSETTS, INC.'S
MEMORANDUM IN SUPPORT OF ITS
MOTION TO INTERVENE AS A PARTY DEFENDANT**

Wine & Spirits Wholesalers of Massachusetts, Inc. (hereinafter "Wholesalers") on behalf of its members submit this memorandum in support of its Motion to Intervene as a Party Defendant in this action pursuant to Rule 24(a)(2) or, in the alternative, Rule 24(b)(2) of the Federal Rules of Civil Procedure. The Wholesalers is a trade association, whose members are wholesalers of alcoholic beverages. All Wholesaler members are duly licensed by the Commonwealth of Massachusetts Alcoholic Beverages Control Commission (hereinafter "ABCC") pursuant to M.G.L. c.138, section 18.

**STATEMENT OF THE CASE**

This case is brought in response to a recent U.S. Supreme Court decision, *Granholm, et al. v. Heald, et al.,* 125 S.Ct. 1885 (2005), which invalidated statutes in Michigan and New York that prohibited out-of-state wineries from shipping directly to in-state consumers as violating the Commerce Clause of the U.S. Constitution. In *Granholm*, the Supreme Court held that the

Twenty-first Amendment did not immunize Michigan and New York from enforcement of the dormant Commerce Clause against laws, regulating the importation and possession of alcoholic beverages, that discriminated against out-of-state interests. In this case, the Plaintiffs attempt to invalidate a Massachusetts statute that allows in-state wineries to obtain a farmer-winery license and sell retail to consumers on the winery premises.

The Plaintiffs consist of two Massachusetts residents, Wolman and Pappas, who are allegedly regular purchasers and consumers of wine, and a Connecticut winery, Stonington Vineyards, Inc., which seeks to sell wines to Wolman and Pappas, but believes the Massachusetts law prevents it from doing so. On May 12, 2005, the Plaintiffs initiated this action against the Chairman of the ABCC, Eddie J. Jenkins, in his official capacity, seeking, *inter alia*, a declaration that M.G.L. c. 138, §§ 2, 18, and 19B are unconstitutional and an injunction requiring the ABCC to allow Stonington Vineyards to sell wines to Wolman and Pappas. On June 22, 2005, the ABCC answered, denying the allegations in the Complaint. On August 2, 2005, the Plaintiffs filed an Assented to Motion to Amend their Complaint. On August 5, 2005, the Plaintiffs moved for judgment on the pleadings.

The Wholesalers seek to intervene as of right or, in the alternative, to permissively intervene to oppose the Plaintiff's Motion for Judgment on the Pleadings and represent its Wholesaler members' interests. The intervenor Wholesaler members have a direct interest in the correct interpretation of *Granholm v. Heald* because of the three-tiered statutory framework Massachusetts has adopted for the regulation of manufacture, sale, distribution and consumption of alcoholic beverages. Under the Massachusetts regulatory scheme, a consumer can only purchase wine from a farmer-winery "on the winery premises." See M.G.L. c. 138, § 19B.

Despite the Plaintiffs' erroneous interpretation, the holder of a farmer-winery license cannot ship wine to Massachusetts residents. Further, the holder of a farmer-winery license can sell its product to Massachusetts wholesalers licensed pursuant to Section 18. Thus, the Wholesalers have an economic stake in the interpretation of the challenged statute. In addition, the orderly marketing of alcoholic beverages, which Chapter 138 promotes, is of vital importance both to public health and safety and the viability of the Wholesalers' businesses.

## ARGUMENT

**A.    THE WHOLESALERS ARE ENTITLED TO INTERVENE AS OF RIGHT.**

Rule 24(a)(2) establishes four requirements which must be satisfied in order for a. party to intervene as of right: (1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest will not be adequately represented by existing parties. *Moosehead Sanitary District v. S.G. Phillips Corporation*, 610 F.2d 49, 52 (1st Cir. 1979).

**I.    The Intervention Application is Timely Filed.**

In this Circuit four factors are to be considered to determine if a motion to intervene is filed in a timely fashion: (1) the length of time the applicants knew or reasonably should have known that their interests were at stake before they moved to intervene; (2) the foreseeable prejudice to existing parties if intervention is granted; (3) the foreseeable prejudice to applicants if intervention is denied; and (4) whether idiosyncratic circumstances when fairly viewed militate for or against intervention. See *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227,

1231 (1st Cir. 1994) and cases cited.

      a.      **Length of Time Wholesalers Knew Interest At Stake.**

The Wholesalers' application is timely as this action was commenced by Plaintiffs on May 12, 2005. On August 2, 2005, the Plaintiffs filed an assented to motion to amend their Complaint. On August 5, 2005, the Plaintiff Stonington Vineyards, Inc. filed a motion for judgment on the pleadings. Wholesalers have moved promptly to protect their interests and did not "sit idly by" once they became aware that their interests were at risk. *Id.* Thus, the Wholesalers have fully satisfied this factor of timely application.

      b.      **Prejudice to Existing Parties.**

This factor focuses on whether the timing of the requested intervention would prejudice to the existing parties. *Id.* The basic requirement for a timely application to intervene "[i]s to prevent last minute disruption of painstaking work by the parties and the Court." *Culbreath v. Dukakis*, 630 F.2d 15, 22 (1st Cir. 1980). In the instant matter the proceedings are still in their infancy; a complaint has been filed and amended and a motion for judgment on the pleadings is pending. The Wholesalers have filed their motion and supporting memorandum as soon as it learned of the motion for judgment on the pleadings so as to file an opposition. Thus, no last minute disruption would occur by allowance of the Wholesalers' application. *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d at 1232 (holding that if putative intervenor acts seasonably to contest, existing parties can make informed decision whether to continue towards prospective settlement). Here, the intervention would not undermine any choice the original litigants might make and would place them on notice that any litigation might have to withstand the Wholesalers' challenge. *Id.*

   **c.**  **Prejudice to Proposed Intervenors.**

  The most important factor in considering timeliness is what prejudice the Wholesalers might suffer if their application to intervene is denied. *Id.* This factor turns on whether the moving parties, if allowed to intervene, would have a probability of success on merits. *Garrity v. Gallen*, 697 F.2d 452, 457(1st Cir. 1983). This case involves a state's right pursuant to the Twenty-First Amendment to the United States Constitution to regulate liquor traffic within its territory and whether such state regulation is discriminatory and violative of the Commerce Clause. More specifically, this case seeks to determine whether identified sections of Chapter 138 are unconstitutional pursuant to *Granholm v. Heald*. The Wholesalers will advance defenses similar to but also distinctive from those which will be advanced by the ABCC in this matter. For example, the ABCC has not asserted any affirmative defenses in its Answer.

   **d.**  **Other Circumstances.**

  When unusual circumstances are viewed, the balance is shifted toward allowance of the Wholesalers' application for intervention. This is not a garden variety tort action. The Plaintiffs' challenge to this portion of the Massachusetts regulatory scheme directly affects a strong public interest in how alcoholic beverages are sold in the Commonwealth of Massachusetts. Cf. *Public Citizen, et al. v. Liggett Group, Inc.*, 858 F.2d 775, 787 (1st Cir. 1988), cert. denied, 488 US. 1030 (1989).

  Thus, the Wholesalers have satisfied this Circuit's four prong timeliness test demonstrating that they were not tardy in their application to intervene.

  **II.**  **The Wholesalers Have A Substantial Interest In This Action.**

  Although to justify intervention as of right the interest must be "significantly

protectable," this Circuit has said that "there is no precise and authoritative definition of the interest required to sustain a right to intervene." *Conservation Law Foundation v. Mosbacher*, 966 F.2d 39, 42 (1st Cir. 1992), quoting, *Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989). The claims of the applicants must bear a "sufficiently close relationship" to the dispute between the original parties and the interest must be direct. *Conservation Law Foundation v. Mosbacher*, 966 F.2d at 42; *Travelers Indemnity Co. v. Dingwell*, 884 F.2d at 683. The Wholesalers have such an interest in the subject matter of this action since the statutory limit under attack directly affects the business operations of the intervenor members and will significantly impact their business and market. See, *Conservation Law Foundation*, 966 F.2d at 43 (1st Cir. 1992). See also *Nynex Corp. v. FCC*, 153 F.R.D. 1, 6 (D. Me. 1994).[1] Here, the Wholesalers are directly regulated by the statute at issue and any changes Chapter 138 will directly affect the conduct of their businesses.

      a.     **The Wholesalers are Subject to Chapter 138 Which is a Comprehensive and Integrated Statute.**

Chapter 138 is an integrated statute where all sections are part of a comprehensive regulatory scheme and each section is, to a substantial degree, dependant on the others. *Johnson*

---

[1] In both *Conservation Law Foundation v. Mosbacher* and *Nynex Corp. v. FCC*, the associations were viewed as adequate parties to intervene on behalf of their members. See also, *New York Pub Int. Research Group, Inc. v. Regents of Univ. of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975)(pharmaceutical association); *Charlesgate Nursing Center v. Rhode Island,*. 723 F. Supp. 859, 862-63 (D.R.I. 1989)(associations representing hospitals and nursing homes); *National Wildlife Fed'n v. Hodel*, 661 F. Supp. 473, 474 (E.D. Ky. 1987)(trade associations representing coal mining companies).
     Moreover, wholesalers have been found to have standing to sue to protect the rights their members in state statutes. E.g., *Massachusetts Wholesalers of Malt Beverage. Inc. v. Commonwealth*, 414 Mass. 411 (1993); *Massachusetts Wholesalers of Malt Beverage. Inc. v. Attorney General*, 409 Mass. 336 (1991).

*v. Martignetti*, 374 Mass. 784, 791 (1978). ("Chapter 138 sets forth a comprehensive statutory scheme regarding all major aspects of the liquor industry including sale of liquor by the drink").

The Wholesaler members are subject to regulation under Chapter 138 and any change in the integrated scheme will affect the manner in which their members conduct business, as well as the type of marketplace in which their members do business.  Furthermore, the Complaint, as drafted, asks for a blanket allowance that a Connecticut vineyard be permitted to ship wine to Massachusetts consumers; therefore, bypassing the "wholesaler level" in the three-tiered distribution system.  Currently in Massachusetts, a holder of a farmer-winery license can only sell its product at retail to consumers ***on the winery premises*** and ***cannot ship*** its product at retail to consumers located in Massachusetts.  See M.G.L. c. 138, § 19B(h).  The plaintiffs fail to acknowledge the complications of the Massachusetts alcoholic beverage regulatory scheme and the Wholesalers must intervene to defend their interest.

        **b.**    **The Wholesalers Have an Interest in Maintaining an Orderly Market.**

The retail liquor stores form the customer base for the Wholesalers' members.  This customer base is made up of thousands of large and small stores. One of the purposes of the statute and regulatory scheme at issue is to preserve an orderly marketplace by ensuring that dealings between small and large retailers and wholesalers are preserved and that temperance is promoted.  See *Johnson v. Martignetti*, 374 Mass. at 491 ("Regulation of the number of licenses issued, therefore, aims at controlling the tendency toward concentration of power in the liquor industry; preventing monopolies; avoiding practices such as indiscriminate price cutting and excessive advertising; and preserving the  right of small independent liquor dealers to do business").

If the Plaintiff, Stonington Vineyards, was allowed to ship its wine directly to Massachusetts residents, it is inevitable that the Massachusetts three-tiered regulatory structure will change. What will prevent out-of-state wholesalers from selling directly to Massachusetts retailers or consumers? This would seriously disrupt the business of the intervenors' members. See *Conservation Law Foundation v. Mosbacher*, 966 F.2d at 43. This action by the Plaintiffs has a direct impact on the Wholesalers' market. Therefore, the Wholesalers have a significant and direct interest to intervene.

### III. The Disposition of this Action will Impair the Wholesalers' Ability to Protect Their Interests.

The Wholesaler members are "so situated that the disposition of th[is] action may as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). Here the Plaintiffs seek, *inter alia*, a declaration that the provisions of the farmer-winery license, as defined in Section 19B of Chapter 138, is invalid. Should this Court issue a declaration invalidating the provision, the Wholesalers would be bound by that determination and would be without recourse to litigate the issue subsequently. *Conservation Law Foundation v. Mosbacher*, 966 F.2d at 43 (should plaintiff prevail, adverse impact on fishermen would be direct rather than contingent on the outcome of later proceedings).[2]

"The adverse impact of stare decisis is ordinarily sufficient to satisfy this requirement." 3B MOORE'S FEDERAL PRACTICE § 24.07[3] at 24-63 (2d ed. 1993).

---

[2] Here, the Wholesalers have an interest that will be directly affected by the outcome of this action, unlike the contingent nature of the interests claimed in *Travelers Indem. Co. v. Dingwell*, 884 F.2d at 638-39 (insurer that reserved right to deny coverage should intervene in federal CERCLA action against insured because state courts were available later adjudicate coverage issue).

> [A] judgment invalidating the order or regulation [of an administrative agency] will result in substantial injury to those deriving direct benefit therefrom and will be as final and conclusive to them as if they were bound by it under the doctrine or *res judicata* and no remedy will be open to them to redress the loss they will suffer because of such judgment.

*New England Petroleum Corp. v. Federal Energy Admin.*, 71 F.R.D. 454, 458 (S.D.N.Y. 1976), quoting, *Atlantic Refining Co. v. Standard Oil Co.*, 304 F.2d 387, 394 (D.C. Cir. 1962). In the present case, the Wholesalers will be adversely and permanently affected should an out-of-state winery be allowed to ship directly to Massachusetts consumers. Such a decision would set an entrenched precedent that eliminates a portion of the three-tiered regulatory structure in Massachusetts. The Wholesalers will be bound by the judgment and have no other forum available to litigate the issue. Thus, it is appropriate that Wholesalers be heard on the issue within the context of the present lawsuit.

### IV. The Wholesalers' Interest May Not Be Adequately Represented By The ABCC.

The Wholesalers are not required to establish that representation of their interests is inadequate, rather, as the United States Supreme Court has ruled, this prong is satisfied as long as they show that representation of their interests may, be inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. l0, 12 S.Ct. 630 (1972) (emphasis supplied); *Conservation Law Foundation v. Mosbacher*, 966 F.2d at 44. The burden of making this showing should be treated as "minimal." *Trbovich*, supra.

In *Conservation Law Foundation*, 966 F.2d 39 (1st Cir. 1992), the First Circuit Court of Appeals determined that the Secretary of Commerce could not adequately represent the interests of the intervening fishing groups in that:

> The Secretary's judgments are necessarily constrained by his view of the public welfare. While the Secretary may well believe that what best serves the public welfare will also best serve the overall interests of the fishermen, the fact remains that the fishermen may see their own interest in a different, perhaps more parochial light.

*Id.* at 44. The First Circuit went on to express skepticism about a government entity's ability to adequately represent the interests of private parties and noted the potential for a conflict of interest. *Id.* at 44-45, citing, *National Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 383-84 (10th Cir. 1977) (government representation is frequently inadequate to protect the interest of private parties).

Here, the original defendant is the chairman of the government agency charged by statute with the "general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting and selling alcoholic beverages." M.G.L. ch. 6, § 44. Their defense is likely to focus on their public interest responsibilities regarding marketing, control of liquor traffic and temperance

On the other hand, the Wholesalers will focus more specifically on the effect that any change in Chapter 138 will have on its members financial interests, on the alcoholic beverage marketplace, and on the orderly marketing of alcoholic beverages.[3] Therefore, while some of the arguments of the intervenors and the original defendants will not diverge, the ABCC's position concerning the statute is affected by its view toward the public interest and its statutory obligations. See, *Nynex Corp. v. FCC*, 153 F.R.D. at 3 (whereas FCC would likely defend challenge to federal statute from perspective of national public welfare, intervenor association

---

[3]In this way, the Court will be more fully apprised of the interests that will be affected by its decision. See *New England Petroleum Corp. v. Federal Energy Admin.*, 71 F.R.D. 454, 458 (S.D.N.Y. 1976).

would present perspective from local cable market).

For the hereinabove stated reasons, the Wine & Spirits Wholesalers of Massachusetts submit that it is entitled to intervene in this action as of right pursuant to Fed. R. Civ. P. 24(a)(2) and request that this Honorable Court grant its Motion to Intervene As A Party Defendant.

**B.     THE WHOLESALERS SHOULD BE ALLOWED TO PERMISSIVELY INTERVENE IN THIS ACTION.**

Should this Honorable Court rule that intervention as of right is not available to the Wholesalers, then it should be allowed to permissively intervene in the current litigation.

Pursuant to Rule 24(b), in order to permissively intervene in an action, the applicants' defense and the main, action must have a question of fact or law in. common. Fed. R.Civ. P. 24(b). Further, the Court must consider whether allowing the applicant to intervene would "unduly delay or prejudice the adjudication of the rights of the parties." *Id.* See *School District of Philadelphia v. Pennsylvania v. Milk Marketing Board*, 160 F.R.D. 66, 67 (E.D. Pa. 1995).

**I.     Common Questions of Law or Fact.**

The Wholesalers have the same primary interest in defending this action as the Defendant. See *Dionne v. Ground Round, Inc.*, 66 F.3d 306 (1st Cir. 1995) (common legal framework, potentially one important common issue of fact) (unpublished disposition); *Nuesse v. Camp*, 385 F.2d 694, 704, 128 U.S. App. D.C. 172 (D.C. Cir. 1967) (in present case legal issues are the same). Its members are subject to extensive regulation under Massachusetts statutes and under regulations issued and enforced by the ABCC. The validity and enforcement of those laws and regulations and their alleged invalidation by *Granholm v. Heald* are central to the orderly marketing of alcoholic beverages. The relief requested by the Plaintiffs directly effects the three-

tiered regulatory structure. Thus, the legal issue that is central to the Plaintiffs' lawsuit – whether *Granholm v. Heald* invalidates Section 19B as violative of the dormant Commerce Clause and thus unconstitutional – strikes at the core of the operation of the businesses of the members of defendant intervenors.

The Wholesalers have a strong economic interest in defending this action and "[p]ermissive intervention may be permitted when the intervenor has an economic interest in the outcome of the suit." *Textile Workers Union of America, CIO v. Allendale Co.*, 226 F.2d 765, 769 (D.C. Cir. 1955); *Conservation Law Foundation*, 966 F.2d at 43 (economic interests substantially affected). Plaintiffs' challenge to the farmer-winery license would directly affect and profoundly alter the economic relationship between in-state and out-of-state distributors of alcoholic beverages. The Wholesalers have an economic interest which is directly threatened by an allowance of the Plaintiff out-of-state winery to ship directly to Massachusetts' consumers. Currently, farmer-wineries can sell to licensed wholesalers (i.e., the Wholesalers' members) or to consumers on the winery premises. If the Plaintiff out-of-state winery is allowed to ship directly to Massachusetts' consumers, it opens the door for out-of-state Wholesalers to ship directly to Massachusetts' consumer or Massachusetts' retail stores. Further, the Wholelsalers could lose business from retailers if consumers can get wine shipped directly to their home. One of the purposes of Chapter 138 and its regulatory scheme at issue is to ensure wide-spread coverage and fair dealing between retailers and wholesalers both in-state and out-of-state.

This lawsuit would undermine Massachusetts' three-tier system of distribution. Hence, there can be no question that the Wholesalers have an adequate stake in this lawsuit to pursue the common questions of law and fact.

## II.     Discretion of the Court.

Rule 24(b)(2) further provides that the Court, in exercising its discretion, should consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. See Fed. R. Civ. P. 24(b)(2). "[B]ut this does not mean that intervention should be denied." 7C Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL, Section 1913, at 381-82 (Rev. Ed.). Thus, Rule 24(h)(2) requires the court to consider whether intervention will "unduly delay" the adjudication. *Id.* at 382. The court must balance whatever delay there will be against the advantages of a complete presentation of arguments and the disposition of all of the claims or defenses in one litigation. *Id.* at 383.

Here, the Wholesalers intervention as a party defendant will not delay the adjudication of the rights of Plaintiffs' or original Defendant. Because of the commonality of the legal defenses that the original Defendant and the intervenor Defendant will present--that *Granholm v. Heald* does not invalidate the farmer-winery license and allow out-of-state wineries to ship directly to consumers--the issues that will be addressed by the Wholesalers are already before the Court. There has been no scheduling conference yet; therefore, the Wholesalers will not cause any delay in the presentation and consideration of this case. Further, there can be no suggestion that the Wholesalers' intervention would prevent the Plaintiffs or the ABCC from putting forth their best case. Indeed, the Wholesalers' participation as a party will assist in presenting the Court with a more complete analysis of the effects of *Granholm v. Heald* on Chapter 138 through their representation by counsel expert in that law.

In addition, as discussed earlier, the Wholesalers' interests are not entirely coextensive with the ABCC's interests and therefore may not be adequately represented by the ABCC. In a

similar case, *Luke Bros. v. Krusell* 1998 WL 50965 (D. Mass., Jan. 30, 1998), the ABCC declined to appeal a ruling of the United States District Court for the District of Massachusetts that the Massachusetts' price posting law was preempted by the Sherman Act. Because this Court had allowed the Massachusetts Wholesalers of Malt Beverages to intervene in that case, it could appeal that decision; to the Court of Appeals for review. That right of review, however, would not have been available to MWMB if it had not obtained the status of an intervenor party. See *Garrity v. Gallen*, 697 F.2d 452, 458 (1st Cir. 1983).

Therefore, should this court find that the Wholesalers do not have the right to intervene under Rule 24(a)(2), the wholesalers have satisfied their requirement for permissive intervention under Rule 24(b)(2).

## CONCLUSION

For the foregoing reasons, the Wholesalers request that this Honorable Court allow it to intervene as a party defendant in this action pursuant to Rule 24(a)(2) or, in the alternative, Rule 24(b)(2) of the Federal Rules of Civil Procedure.

By its attorneys,

    **/s/ Kathryn E. Pieczarka**
Evan T. Lawson (BBO# 289280)
Kathryn E. Pieczarka (BBO# 658785)
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210
(617) 439-4990

    **/s/ Louis A. Cassis**
Louis A. Cassis (BBO# 078540)
18 Russell Park
Quincy, MA 02169
(617) 773-7000