UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STONINGTON VINEYARDS, INC., ROBERTA WOLMAN and NICK PAPAS,<br><br>  Plaintiffs,<br><br>v.<br><br>EDDIE J. JENKINS, in his official capacity as Chairman of the Massachusetts Alcoholic Beverages Control Commission, et al.<br><br>  Defendants. | CIVIL ACTION<br>NO. 05-CV-10982-JLT |

**MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION FOR STAY OF JUDICIAL PROCEEDINGS PENDING STATE LEGISLATIVE ACTION OR, IN THE ALTERNATIVE, REQUEST FOR ENLARGEMENT OF TIME TO RESPOND TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

Plaintiffs challenge the constitutionality of portions of the Massachusetts liquor laws "to the extent that they permit only Massachusetts residents to obtain a license to sell and ship wine directly to consumers and retailers, and prohibit out-of-state wineries from selling and shipping wine directly to consumers and retailers within the Commonwealth." Compl., p. 1. Citing the recent United State Supreme Court decision in Granholm v. Heald, 125 S. Ct. 1885 (2005), plaintiffs claim that these provisions violate the Commerce Clause of the United States Constitution. They seek a declaration and injunction "requiring defendant[s] to issue winery licenses without regard to residence, and barring defendant from enforcing these provisions to prohibit out-of-state wineries from selling and shipping wine directly to consumers and licensed retail wine sellers." Compl. p. 2.

Because there is presently a state legislative process underway that may moot plaintiffs'

constitutional claim, the State Defendants request a stay of this proceeding pending the outcome of that process. As of the date of this filing, the Massachusetts Legislature is considering at least seven bills that propose to amend the state's liquor laws. See Affidavit of William A. Kelley, Jr. ("Kelly Affidavit"). Because the Supreme Court in Granholm made it clear that states with discriminatory liquor laws could reform those laws either by extending direct shipping privileges to out-of-state wineries or by eliminating such privileges for in-state wineries, this Court should issue a stay of this proceeding so that the Massachusetts Legislature may make such a policy choice without prior judicial action. Such a stay should extend to at least the third week in November, when the Massachusetts Legislature typically recesses for the Holidays. To the extent this Court is not inclined to issue such a stay, the State Defendants request that they be given additional time to submit a further response to plaintiffs' Motion for Judgment on the Pleadings in which they would address the constitutionality of the Massachusetts Liquor Control Act, G.L. c. 138, § 1 et seq., the severability of that statute, and the appropriateness of certifying the severability question to the Massachusetts Supreme Judicial Court.

**STATEMENT OF FACTS**

I.      Complaint.

The complaint alleges as follows. Plaintiffs Roberta Wolman and Nick Papas "are over the age of twenty-one" and "are regular purchasers and consumers of wine, and would purchase bottled wine from out-of-state wineries and have those wines shipped to their residences if Massachusetts law permitted them to do so." Compl. ¶ 3. Plaintiff Stonington Vineyards, Inc. "is an out-of-state winery located in Stonington, Connecticut" and "holds all necessary Connecticut and federal licenses and permits to manufacture and sell wine in interstate commerce." Id. ¶ 4. "It would sell and ship wines directly to plaintiffs Wolman, Pappas, and

other consumers at their residences, and to licensed retail wine sellers at their places of business, in the Commonwealth of Massachusetts, if state law permitted it to do so." Id.

II.     The Massachusetts Statutory Scheme.

The Massachusetts Alcoholic Beverages Control Commission (the "Commission") "consist[s] of a commissioner and 2 associate commissioners appointed by the treasurer." G.L. c. 10, § 70. The Commission exercises "general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting and selling alcoholic beverages." G.L. c.10, § 71. Among the responsibilities of the Commission is the enforcement of the state's liquor laws.

The Massachusetts Liquor Control Act provides, *inter alia*, that "no person shall manufacture, with intent to sell, sell or expose or keep for sale, store, transport, import or export alcoholic beverages or alcohol, except as authorized by this chapter . . . ." G.L. c. 138, § 2. The statute also provides that the Commission "may issue to any individual who is both a citizen and resident of the Commonwealth . . . and to corporations organized under the laws of the commonwealth whereof all the directors are citizens of the United States and a majority thereof residents of the Commonwealth . . . licenses as wholesalers and importers (1) to sell for resale to other licensees under this chapter alcoholic beverages manufactured by any manufacturer licensed under the provisions of section [19] and to import alcoholic beverages into the commonwealth from holders of certificates issued under section [18B] whose licensed premises are located in other states and foreign countries for sale to such licensees." G.L. c. 138, § 18.

Section 19B of the Liquor Control Act governs the operation of vineyards within the Commonwealth. It was enacted "for the purpose of encouraging the development of domestic vineyards," and authorizes the Commission to "issue a farmer-winery license to any applicant

who is both a citizen and resident of the commonwealth . . . and to applying corporations organized under the laws of the commonwealth or organized under the laws of any other state of the United States and admitted to do business in this commonwealth . . . ." G.L. c. 138, § 19B(a). A "winegrower" holding such a license "may sell wine or winery products . . . at retail by the bottle to consumers for consumption off the winery premises." G.L. c. 138, § 19B(g)(7).

III.     Granholm.

In attacking the constitutionality of certain portions of the Liquor Control Act, the plaintiffs principally rely on Granholm v. Heald, 125 S. Ct. 1885 (2005). In Granholm, the Supreme Court held that state laws permitting in-state wineries to ship wine directly to consumers while prohibiting out-of-state wineries from doing so discriminate against interstate commerce in violation of the Commerce Clause and are saved by neither the Twenty-first Amendment nor the policy concerns expressed by the defendants in that case.

Granholm involved laws of Michigan and New York. Both States -- like Massachusetts -- employ a "three tier" distribution system for alcoholic beverages that require separate licenses for producers, wholesalers, and retailers. Michigan law exempts only in-state wineries from its requirement that wine producers must distribute their wine through wholesalers. Id. at 1893-1894. New York licenses in-state wineries to ship wine made from New York grapes directly to consumers; out-of-state wineries are restricted from doing so unless they establish "a branch factory, office or storeroom within the state of New York." Id. at 1894. The Court first concluded that the Michigan and New York laws discriminate against interstate commerce and are, therefore, virtually per se invalid unless saved by the Twenty-first Amendment. The Court stated that the Michigan and New York laws "deprive citizens of their right to have access to the markets of other States on equal terms." Id. at 1896. "Allowing States to discriminate against

4

out-of-state wine invites a multiplication of preferential trade areas destructive of the very purpose of the Commerce Clause." Id. (quotation omitted).

Regarding the Michigan law, the Court stated that "the differential treatment requires all out-of-state wine, but not all in-state wine, to pass through an interstate wholesaler and retailer before reaching consumers." Id. at 1896. The resulting "cost differential . . . can effectively bar small wineries from the Michigan market." Id.

Regarding the New York law, the Court noted that, unlike the Michigan law, "it does not bar direct shipments altogether." Id. However, the Court stated, requiring an in-state distribution operation "is just an indirect way of subjecting out-of-state wineries, but not local ones, to the three-tier system." Id. In-state producers are free to sell directly to consumers. Id. at 1896-1897. These and other aspects of the New York law led the Court to have "no difficulty concluding that New York, like Michigan, discriminates against interstate commerce through its direct-shipping laws." Id. at 1897.

Next, the Court held that the States' broad power to regulate liquor under Section 2 of the Twenty-first Amendment does not include the power "to ban, or severely limit, the direct shipment of out-of-state wine while simultaneously authorizing direct shipment by in-state producers." Id. at 1907. Section 2 provides that the "transportation or importation into any State . . . of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." The Court reviewed its cases decided before Prohibition and concluded that they stood for the proposition that, while a State could legally prohibit the production and sale of alcohol within its own boundaries, it could not bar the importation of alcohol from outside the State. The Court then considered two federal statutes -- the Wilson Act and the Webb-Kenyon Act -- and held that the repeal of the Eighteenth Amendment by the Twenty-first Amendment returned to the States only

those powers they had held prior to Prohibition -- powers that did not include the authority to enact discriminatory laws.  Id. at  1902.

Finally, the Court rejected the States' justifications for its discrimination, holding that they had "produced little evidence" that out-of-state shipments presented dangers of sales to minors and tax evasion greater than the same dangers posed by in-state sales.  Id. at 1905-1907.  The Court stated that state laws may continue to restrict sales to minors by all shippers.  Regarding taxes, the Court said that the States could require a permit as a condition of direct shipping and also require periodic reports and the payment of taxes.  Id. at 1906.

## ARGUMENT

**I.      This Court Should Stay Proceedings Pending State Legislative Action.**

The Supreme Court's decision in Granholm gave States that discriminated against out-of-state wineries a choice:  they could ban the shipment of wine to consumers within their borders altogether or they could allow direct shipment of wine "on evenhanded terms."  Id. at 1907.  The decision predictably prompted State legislatures throughout the nation to revisit their liquor control laws.  Some States have enacted legislation allowing both in-state and out-of-state wineries to ship wine directly to their residents.  For example, New York, whose laws were found to be unconstitutional in Granholm, has since amended those laws to allow direct shipments of wine to New York residents by out-of-state wineries.  N.Y. Alco. Bev. Cont. Law § 79-c.  Other States are considering banning direct shipments to consumers altogether.  For example, Michigan, the other litigant in the Granholm case, is considering banning all direct shipments of wine.  See "Bill Would Ban Wine Shipments to Consumers," Detroit Free Press, June 16, 2005, attached hereto as Exhibit A.  In Massachusetts, the Legislature is considering a variety of bills, some of which would allow out-of-state wineries to ship to Massachusetts

residents and others that would ban direct shipments of wine entirely.  See Kelley Affidavit at ¶ 6.  Furthermore, a sub-committee has been formed to study the issue and recommend language for proposed legislation.  Id. at ¶ 5.

Under such circumstances, this Court should issue a stay of all proceedings in this case in order to allow the Massachusetts Legislature sufficient time to enact legislation reflecting its policy choice.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 166 (1936); see also Microfinancial, Inc. v. Premier Holidays Int'l, 385 F.3d 72, 77 (1st Cir. 2004) ("It is apodictic that federal courts possess the inherent power to stay proceedings for prudential reasons.").

Staying this proceeding would not only allow policymakers to make a policy choice, it would allow the Court to avoid ruling on a constitutional question.  As the First Circuit has observed, "[u]ncertain questions of constitutional law should be addressed only when absolutely necessary."  El Dia, Inc. v. Colon, 963 F.2d 488, 494 (1st Cir. 1992); citing Ashwander v. TVA, 297 U.S. 288, 346, 56 S.Ct. 466, 482 (1936) (Brandeis, J., concurring) (Supreme Court has adopted "for its own governance . . . a series of rules under which it has avoided passing upon a large part of all the constitutional questions pressed upon it for decision.").  In this case, plaintiffs' amended complaint might be mooted by the enactment of one of the bills presently being considered by the Massachusetts Legislature.  Where laws that are challenged as unconstitutional are amended during the course of litigation, the posture of the case may be "significantly alter[ed]," and the constitutional claims mooted.  Department of Treasury v. Galioto, 477 U.S. 556, 559-560, 106 S.Ct. 2683, 2685-2686 (1986) (equal protection claims

mooted by Congressional enactment amending challenged statute).

The issuance of a stay would also save this Court from having to confront the difficult question of severability.  Chapter 138 of the Massachusetts General Laws contains an express "severability" clause, which provides:  "In respect to their constitutionality, all the provisions of this chapter are hereby declared to be separable."  G.L. c. 138, § 66.  Assuming it finds that certain provisions of G.L. c. 138 are unconstitutional, this Court would have to modify those provisions to either allow out-of-state wineries to ship wine directly to Massachusetts consumers or to prohibit in-state wineries from making such shipments.  Courts that have confronted this precise issue have arrived at differing results.  For example, in C.A. Dickerson v. Bailey, 336 F.3d 388 (5th Cir. 2003), the Fifth Circuit found portions of the Texas Alcoholic Beverage Code unconstitutional as they discriminated against out-of-state wineries.  Having found the state regulatory scheme unconstitutional, the Fifth Circuit addressed the appropriate remedy.  The Administrator of the Texas Alcoholic Beverage Commission argued that the appropriate remedy would be an "injunction against the enforcement of the special benefits accorded to the *in-state* wineries in the Texas Wine Marketing Act."  Id. at 407 (emphasis in original).  The Fifth Circuit disagreed, however, observing that the Commerce Clause confers "a right to engage in interstate trade free from restrictive state regulation."  Id. (citing Dennis v. Higgins, 498 U.S. 439, 448, 111 S.Ct. 865 (1991)).  Claims brought under the Commerce Clause inherently seek the extension of benefits, not the extension of burdens.  Id.  Thus, the Fifth Circuit affirmed the lower court's injunction against enforcement of restrictions on out-of-state wineries.  Id.

Other courts in the same position, however, have elected instead to enjoin direct shipment privileges granted to in-state producers.  For example, in Beskind v. Easley, 325 F.3d 506, 517-520 (4th Cir. 2003), the Fourth Circuit found that North Carolina's Alcoholic Beverage

Control laws unconstitutionally discriminated against out-of-state wineries by prohibiting them from shipping wine directly to consumers in North Carolina. Rather than strike down that prohibition against out-of-state wineries, however, the Fourth Circuit struck down the provision that created the "local preference" for North Carolina wineries. <u>Id.</u> at 519. The Fourth Circuit severed the statute in this way in order to promote "comity and harmony" with the State of North Carolina. <u>Id.</u> The Court reasoned that eliminating the privilege for in-state wineries rather than authorizing wineries throughout the Nation to ship directly to North Carolina consumers achieved the goal of "disturbing only as much of the State regulatory scheme as is necessary to enforce the U.S. Constitution." <u>Id.</u> The Fourth Circuit acknowledged that its holding "frustrates the plaintiffs' efforts to purchase wine directly from out-of-state wineries and to ship wine directly into North Carolina," but the plaintiffs' "right is not to void a law protected by the Twenty-First Amendment but rather to eliminate discrimination in interstate commerce." <u>Id.</u> at 520.

The precise way in which unconstitutional provisions of a state statute should be severed from the rest of the statute is a question of state law. <u>United States Dept. of Treasury v. Fabe</u>, 508 U.S. 491, 510, 113 S.Ct.2202, 2212 (1993). Under Massachusetts law, courts must attempt to decipher how the Massachusetts Legislature would reform an unconstitutional statute. <u>See</u> <u>Murphy v. Comm'r of the Department of Industrial Accidents</u>, 418 Mass. 165, 168-169, 635 N.E.2d 1180, 1183 (1994). Given that the Massachusetts Legislature is presently in the process of answering that question, <u>see</u> Kelley Affidavit, this Court should allow time for that policy debate to run its course. As such, it would be appropriate for this Court to issue a stay of all proceedings in this action pending state legislative action.

**II.     If This Court Declines To Issue A Stay, It Should Allow The State Defendants Additional Time to Respond To Plaintiff's Motion For Judgment On The Pleadings.**

If this Court declines to issue a stay of all proceedings, it should allow the State Defendants additional time to address the merits of plaintiffs' Motion for Judgment on the Pleadings. Specifically, the State Defendants would address the constitutionality of the challenged provisions of the Massachusetts Liquor Control Act; how that statute could be severed if found to be unconstitutional; and the appropriateness of certifying the severability question to the Massachusetts Supreme Judicial Court.

Regarding the last point, the State Defendants note that the United States Supreme Court has observed that certification is appropriate whenever a federal court is presented with "[n]ovel, unsettled questions of state law." Arizonans for Official English v. Arizona, 520 U.S. 43, 79, 117 S. Ct. 1055, 1075 (1997). Certification of such questions to the State's highest court allows federal courts "to save 'time, energy, and resources and help build a cooperative judicial federalism.'" Id. at 1073 (quoting Lehman Brothers v. Schein, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744 (1974)). As discussed above, questions of severability of unconstitutional state statutes are questions of state law. Fabe, 508 U.S. at 510. Certification is not an extraordinary procedure, but one focused upon the desirability of obtaining an authoritative determination of unsettled state law from a State's highest court. Furthermore, in a case such as this where "the meaning of a state law depends upon the decisionmaker's ability to discern the state legislature's intent from an array of mixed signals, considerations of federalism, comity, and practicality suggest that the state's highest tribunal is best positioned to make an informed and authoritative

judgment." Acadia Ins. Co. v. McNeil, 116 F.3d 599, 605 (1st Cir. 1997) (certifying question sua sponte).

Massachusetts law provides a procedure for certifying questions of law to the Supreme Judicial Court for the Commonwealth. Supreme Judicial Court Rule 1:03 provides, in pertinent part:

> This court may answer questions of law certified to it by . . . a United States District Court . . . when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which there is no controlling precedent in the decisions of this court.

SJC Rule 1:03, Section 1. The Supreme Judicial Court has often answered certified questions. E.g., Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 682 N.E.2d 624 (1997) (questions certified by the Court of Appeals for the First Circuit); Dwyer v. Cempellin, 424 Mass. 26, 673 N.E.2d 863 (1996) (questions certified by the United States District Court for the District of Massachusetts). The question presented here clearly would be "determinative of the cause" within SJC Rule 1:03. This case may also be appropriate for certification because it presents an important question of the State's alcohol policy, a matter that is particularly within its interest to regulate, as recognized by the Twenty-First Amendment.

        Respectfully submitted,

        By their attorneys,

        THOMAS F. REILLY
        ATTORNEY GENERAL


        <u>/s/ David Hadas</u>
        Thomas A. Barnico, BBO No. 030040
        David Hadas, BBO No. 641294
        Assistant Attorneys General
        Government Bureau
        One Ashburton Place, Room 2019
        Boston, Massachusetts 02108
        (617) 727-2200, ext. 2086
        tom.barnico@ago.state.ma.us
        david.hadas@ago.state.ma.us


Dated:  September 2, 2005

### freep/news/michigan

**COLUMNISTS**
- Susan Ager
- Desiree Cooper
- Brian Dickerson
- Rochelle Riley

**SECTIONS**
- Today's stories
- Metro
- Wayne
- Oakland
- Macomb
- Michigan
- Casinos
- Roadwork
- Education
- Health
- Children First
- Weather
- Politics
- Religion
- Obituaries
- Nation/World
- AP wire

**HELP**
- Search
- Archives
- Death notices
- About us
- Subscribe

**MARKETPLACE**
- Classifieds
- Find a job
- Find a home
- Find a car
- Yellow Pages
- Place an ad

(none)

## Bill would ban wine shipments to consumers

*June 16, 2005, 5:14 PM*

LANSING, Mich. (AP) -- Wineries could not ship wine directly to Michigan consumers under bills introduced Thursday in the state Legislature, but the measure's outlook is unclear because at least one top Republican opposes it.

Senate Minority Leader Bob Emerson, a Flint Democrat, and Rep. Chris Ward, a Brighton Republican, introduced separate bills that would make it illegal for in-state and out-of-state wineries to ship to Michigan customers.

Both are a response to a recent U.S. Supreme Court ruling that requires the state to change its law.

Michigan requires out-of-state wine to be sold through licensed wholesalers or vendors but has no similar rules for in-state wineries. The high court said wineries must be on equal footing -- meaning the GOP-controlled Legislature will either loosen restrictions to let all wineries sell directly to consumers, or tighten them to bar all businesses from doing so.

Emerson, along with 14 Democrats and three Republicans who are co-sponsoring the Senate bill, prefers the latter.

He cited concerns about the state's ability to collect taxes on out-of-state sales and whether minors could easily buy alcohol over the Internet.

Ward said direct shipments make up a small amount of sales among in-state wineries, but the potential for harm is great without an outright ban.

- State ID fraud is alleged
- Fire devours landmark
- Selfridge base in fight for planes and jobs
- 4 state residents contract West Nile in '05

"We all know what it's like to get a parcel in the mail and have it wait for you," he said. "You're going to have the potential of having a bottle of alcohol on the porch for anyone to pick up."

But Senate Majority Leader Ken Sikkema, a Wyoming Republican, said he opposes an outright ban and thinks there is a way to regulate direct shipments from outside Michigan.

"I'd like to see some reasonable flexibility for consumers," he said.

That approach is backed by other Republican lawmakers in the Senate, especially those from districts with wineries.

Sen. Michelle McManus, a Republican from Lake Leelanau in northern Michigan, said she is writing legislation that would let consumers received direct shipments but also address the sales tax and underage drinking concerns.

"An outright ban will cut our wineries off at the knees," she said. "We must remember that Michigan wineries have been allowed to ship their products directly to consumers for more than 30 years, and it has not resulted in dramatic increases in underage drinking."

Both sides said the Legislature likely will not pass legislation until a lower court rules on a remedy for plaintiffs who contested the state's law.

------

The wine shipment bills are House Bill 4959 and Senate Bill 600.

------

On the Net:

Michigan Legislature:
http://www.legislature.mi.gov
[an error occurred while processing this directive]