UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STONINGTON VINEYARDS, INC.,
ROBERTA WOLMAN and NICK PAPAS,

        Plaintiffs,

v.

EDDIE J. JENKINS, in his official capacity as
Chairman of the Massachusetts Alcoholic
Beverages Control Commission, et al.

        Defendants.

CIVIL ACTION
NO. 05-CV-10982-JLT

**MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS'
(1) OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON
THE PLEADINGS AND (2) MOTION TO CERTIFY QUESTION OF LAW**

## INTRODUCTION

Plaintiffs challenge the constitutionality of portions of the Massachusetts liquor laws "t the extent that they permit only Massachusetts residents to obtain a license to sell and ship win directly to consumers and retailers, and prohibit out-of-state wineries from selling and shippin wine directly to consumers and retailers within the Commonwealth." Amended Compl., p. 1. Citing the recent United State Supreme Court decision in Granholm v. Heald, 125 S. Ct. 1885 (2005), plaintiffs have now moved for judgment on the pleadings claiming that these provision of state law violate the Commerce Clause of the United States Constitution. They seek a declaration and injunction "requiring defendant[s] to issue winery licenses without regard to residence, and barring defendant from enforcing these provisions to prohibit out-of-state wineries from selling and shipping wine directly to consumers and licensed retail wine sellers." Amended Compl., p. 2.

As discussed below, the State Defendants decline to take a position on the question of constitutionality of the challenged portions of the Massachusetts Liquor Control Act, G.L. c. 138, § 1 et seq. If this Court determines that aspects of that statute are unconstitutional, however, the resulting question of severability should be certified to the Massachusetts Supreme Judicial Court. See Arg. II, below. Alternatively, if this Court elects not to certify the question, it should sever the statute by eliminating the current authority for direct sale and shipping by Massachusetts "farm wineries" rather than eliminating direct shipment restrictions on out-of-state wineries. See Arg. III, below.

## STATEMENT OF FACTS

**Amended Complaint**

The amended complaint alleges as follows. Plaintiffs Roberta Wolman and Nick Papa "are over the age of twenty-one" and "are regular purchasers and consumers of wine, and would purchase bottled wine from out-of-state wineries and have those wines shipped to their residences if Massachusetts law permitted them to do so." Compl. ¶ 3. Plaintiff Stonington Vineyards, Inc. "is an out-of-state winery located in Stonington, Connecticut" and "holds all necessary Connecticut and federal licenses and permits to manufacture and sell wine in interstate commerce." Id. ¶ 4. "It would sell and ship wines directly to plaintiffs Wolman, Pappas, and other consumers at their residences, and to licensed retail wine sellers at their places of business in the Commonwealth of Massachusetts, if state law permitted it to do so." Id.

**The Massachusetts Statutory Scheme**

The Massachusetts Alcoholic Beverages Control Commission (the "Commission") "consist[s] of a commissioner and 2 associate commissioners appointed by the treasurer." G.L.

c. 10, § 70. The Commission exercises "general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting and selling alcoholic beverages." G.L. c. 10, § 71. Among the responsibilities of the Commission is the enforcement of the state liquor laws.

The Massachusetts Liquor Control Act provides, *inter alia*, that "no person shall manufacture, with intent to sell, sell or expose or keep for sale, store, transport, import or export alcoholic beverages or alcohol, except as authorized by this chapter . . . ." G.L. c. 138, § 2. The statute also provides that the Commission "may issue to any individual who is both a citizen and resident of the Commonwealth . . . and to corporations organized under the laws of the commonwealth whereof all the directors are citizens of the United States and a majority thereof residents of the Commonwealth . . . licenses as wholesalers and importers (1) to sell for resale to other licensees under this chapter alcoholic beverages manufactured by any manufacturer licensed under the provisions of section [19] and to import alcoholic beverages into the commonwealth from holders of certificates issued under section [18B] whose licensed premises are located in other states and foreign countries for sale to such licensees." G.L. c. 138, § 18.

Section 19B of the Liquor Control Act governs the operation of certain vineyards within the Commonwealth. It was enacted "for the purpose of encouraging the development of domestic vineyards," and authorizes the Commission to "issue a farmer-winery license to any applicant who is both a citizen and resident of the commonwealth . . . and to applying corporations organized under the laws of the commonwealth or organized under the laws of any other state of the United States and admitted to do business in this commonwealth . . . ." G.L. c. 138,

§ 19B(a). A "winegrower" holding such a license "may sell wine or winery products . . . at re by the bottle to consumers for consumption off the winery premises." G.L. c. 138, § 19B(g)(

**The Decision of the Supreme Court in Granholm v. Heald**

In attacking the constitutionality of certain portions of the Liquor Control Act, the plaintiffs principally rely on Granholm v. Heald, 125 S. Ct. 1885 (2005). In Granholm, the Supreme Court held that state laws permitting in-state wineries to ship wine directly to consumers while prohibiting out-of-state wineries from doing so discriminate against interstat commerce in violation of the Commerce Clause. The Court rejected arguments made by the States under the Twenty-first Amendment and citing the state regulatory policies at stake.

Granholm involved laws of Michigan and New York. Both States--like Massachusetts employ a "three tier" distribution system for alcoholic beverages that require separate licenses for producers, wholesalers, and retailers. Michigan law exempts only in-state wineries from it requirement that wine producers must distribute their wine through wholesalers. Id. at 1893-1894. New York licenses in-state wineries to ship wine made from New York grapes directly consumers; out-of-state wineries are restricted from doing so unless they establish "a branch factory, office or storeroom within the state of New York." Id. at 1894.

The Supreme Court first concluded that the Michigan and New York laws discriminate against interstate commerce and are, therefore, virtually per se invalid unless saved by the Twenty-first Amendment. The Court stated that the Michigan and New York laws "deprive citizens of their right to have access to the markets of other States on equal terms." Id. at 1896. "Allowing States to discriminate against out-of-state wine invites a multiplication of preferentia trade areas destructive of the very purpose of the Commerce Clause." Id. (quotation omitted).

4

Regarding the Michigan law, the Court stated that "the differential treatment requires out-of-state wine, but not all in-state wine, to pass through an interstate wholesaler and retail before reaching consumers." Id. at 1896. The resulting "cost differential . . . can effectively small wineries from the Michigan market." Id.

Regarding the New York law, the Court noted that, unlike the Michigan law, "it does bar direct shipments altogether." Id. However, the Court stated, requiring an in-state distribution operation "is just an indirect way of subjecting out-of-state wineries, but not local ones, to the three-tier system." Id. In-state producers are free to sell directly to consumers. Id. at 1896-1897. These and other aspects of the New York law led the Court to have "no difficu concluding that New York, like Michigan, discriminates against interstate commerce through direct-shipping laws." Id. at 1897.

Next, the Court held that the States' broad power to regulate liquor under Section 2 of the Twenty-first Amendment does not include the power "to ban, or severely limit, the direct shipment of out-of-state wine while simultaneously authorizing direct shipment by in-state producers." Id. at 1907. Section 2 provides that the "transportation or importation into any St . . . of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." The Court reviewed its cases decided before Prohibition and concluded that they stood for the proposition that, while a State could legally prohibit the production and sale of alcohol within its own boundaries, it could not bar the importation of alcohol from outside the State. The Court then considered two federal statutes -- the Wilson Act and the Webb-Kenyon Act -- and held that the repeal of the Eighteenth Amendment by the Twenty-first Amendment returned to the States onl

those powers they had held prior to Prohibition -- powers that did not include the authority to enact discriminatory laws. Id. at 1902.

Finally, the Court rejected the States' justifications for its discrimination, holding that they had "produced little evidence" that out-of-state shipments presented dangers of sales to minors and tax evasion greater than the same dangers posed by in-state sales. Id. at 1905-190 The Court stated that state laws may continue to restrict sales to minors by all shippers. Regarding taxes, the Court said that the States could require a permit as a condition of direct shipping and also require periodic reports and the payment of taxes. Id. at 1906.

## ARGUMENT

### I. The State Defendants Decline to Agree to a Judgment Regarding the Constitutionality of the Challenged Portions of the Massachusetts Liquor Control Act.

Plaintiffs cite Granholm and challenge the constitutionality of portions of the Massachusetts liquor laws "to the extent that they permit only Massachusetts residents to obtai a license to sell and ship wine directly to consumers and retailers, and prohibit out-of-state wineries from selling and shipping wine directly to consumers and retailers within the Commonwealth." Amended Compl., p. 1. In light of Granholm the State Defendants respond plaintiffs' claims as follows.

In Nat'l Rev. Corp. v. Violet, 807 F.2d 285, 288 (1st Cir. 1986), the Court of Appeals fo the First Circuit held that "[a]n attorney general can have no authority" to agree to a judgment declaring that an act of the state legislature is unconstitutional. To do so would be "a clear confusion of the three branches of government; it is the judicial branch, not the executive, that may reject legislation." Id. In this case, despite Granholm, the State Defendants decline to agre

to such a judgment and further decline to take any position with respect to the constitutionali[ty o]f the challenged portions of §§ 2, 18, or 19B of the Liquor Control Act, as they relate to sale a[nd] shipment to <u>consumers</u>. Even in the absence of argument by the Commonwealth, however, under <u>National Revenue Corp. v. Violet</u>, the Court must make its own decision on the constitutional questions presented by the amended complaint. Regarding the sale and shipme[nt] of wine directly to <u>retailers</u>, the State Defendants note that <u>Granholm</u> did not directly involve sale and shipment to retailers and that they are not aware of any court decision extending <u>Granholm</u> to such activity.

**II.    This Court Should Certify The State-Law Question Of Severability To The Massachusetts Supreme Judicial Court.**

If this Court determines that the challenged provisions of the Liquor Control Act are unconstitutional, it must determine what provisions survive that ruling. See <u>Ackerley Communications of Massachusetts, Inc. v. City of Cambridge</u>, 135 F.3d 210, 215 (1st Cir. 199[8]). In this case, there are two courses that the Court may take on the issue of severability. It may, [at] the plaintiffs request, eliminate the prohibition on direct shipments by out-of-state wineries to consumers and retailers. Or it may eliminate the current authority granted to in-state wineries [to] ship directly to consumers and retailers. Either of these statutory schemes would satisfy <u>Granholm</u>, which gave States that discriminated against out-of-state wineries a choice of either banning the shipment of wine to consumers within their borders altogether or allowing direct shipment of wine "on evenhanded terms." <u>Id.</u> at 1907. This choice is an important one for the State's regulation of the sale of alcoholic beverages. For the reasons stated below, the question should be certified to the Massachusetts Supreme Judicial Court.

The United States Supreme Court has strongly recommended certification in cases wh[ere] a federal court is presented with "[n]ovel, unsettled questions of state law." Arizonans for Official English v. Arizona, 520 U.S. 43, 79 (1997). The Court has criticized the failure to certify where "a more cautious approach was in order." Id. at 77. Certification allows federa[l] courts "to save 'time, energy, and resources and help build a cooperative judicial federalism.'" Id. (quoting Lehman Brothers v. Schein, 416 U.S. 386, 391 (1974)). The severability of the unconstitutional provisions of a state statute is a question of state, not federal, law. United St[ates] Dept. of Treasury v. Fabe, 508 U.S. 491, 510 (1993). Massachusetts law thus governs the question what the Massachusetts Legislature would have intended to preserve if it had known a constitutional defect in the Liquor Control Law. See Murphy v. Comm'r of the Department Industrial Accidents, 418 Mass. 165, 168-169, 635 N.E.2d 1180, 1183 (1994). However, with respect to this question, there is no "controlling interpretation of the statute's meaning and eff[ect]" by the state courts." Arizonans for Official English, 520 U.S. at 75 (quoting Poe v. Ullman, 3[67] U.S. 497, 526, 81 S.Ct. 1752, 1767-1768 (1961) (Harlan, J., dissenting)).

Certification is not an extraordinary procedure, but one focused upon the desirability [of] obtaining an authoritative determination of unsettled state law from a State's highest court. Where "the meaning of a state law depends upon the decision-maker's ability to discern the st[ate] legislature's intent from an array of mixed signals, considerations of federalism, comity, and practicality suggest that the state's highest tribunal is best positioned to make an informed and authoritative judgment." Acadia Ins. Co. v. McNeil, 116 F.3d 599, 605 (1st Cir. 1997) (certifying question sua sponte).

Massachusetts law provides a procedure for certifying questions of law to the Supreme

Judicial Court for the Commonwealth. Supreme Judicial Court Rule 1:03 provides, in pertine part:

> This court may answer questions of law certified to it by . . . a United States District Court . . . when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which there is no controlling precedent in the decisions of this court.

SJC Rule 1:03, Section 1. The Supreme Judicial Court has often answered certified questions E.g., Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 682 N.E.2d 624 (1997) (questions certified by the Court of Appeals for the First Circuit); Dwyer v. Cempellin, 424 Mass. 26, 67 N.E.2d 863 (1996) (questions certified by the United States District Court for the District of Massachusetts). The question presented here clearly would be "determinative of the cause" regarding severability within SJC Rule 1:03. This case is also appropriate for certification because it presents an important question of the State's alcohol policy, a matter that is particularly within its interest to regulate, as recognized by the Twenty-First Amendment of tl United States Constitution. For these reasons, the Court should grant the State Defendants' motion to certify.

### III. If This Court Declines To Certify The Question To The Massachusetts Supreme Judicial Court, It Should Sever The Liquor Control Act By Eliminating The Current Authority For Direct Sale by Local "Farm Wineries" Rather Than Eliminating The Restrictions On Out-Of-State Wineries.

The United States Supreme Court has held that the severability of an offending statutor provision is purely a question of state law, and where state law provides for severance, courts may not invalidate a statute more broadly than is required to eliminate the offending provision See Leavitt v. Jane L., 518 U.S. 137, 139 (1996). The Court of Appeals for the First Circuit ha

recognized that, under Massachusetts law, "[w]here a statutory provision is unconstitutional, it is in its nature separable from the other parts of the statute, so that they may well stand independently of it, and if there is no such connection between the valid and the invalid parts it the [legislative body] would not be expected to enact the valid part without the other, the stat will be held good, except in that part which is in conflict with the Constitution." Ackerley Communications of Massachusetts, Inc., 135 F.3d at 215. The Massachusetts Liquor Contro Act contains an express "severability" clause, which provides: "In respect to their constitutionality, all the provisions of this chapter are hereby declared to be separable." G.L. 138, § 66; see also G.L. c. 4, § 6, cl. Eleventh.

To the extent this Court finds that certain provisions of the Liquor Control Act are unconstitutional, it should sever the statute by eliminating the authority given to in-state wine s to sell and ship directly to consumers and retailers rather than by eliminating the shipment prohibitions on out-of-state wineries. Severance of the portions of § 19B currently authorizir direct sales and shipment is supported by Massachusetts law which favors severance where p of a statute appear in "obviously separate sections" and are "certainly capable of serverance." Boston Gas Co. v. Department of Pub. Utilities, 387 Mass. 531, 540 (1982). Severance in thi fashion would minimize interference with, and disruption to, the broader alcohol regulatory scheme and enforcement policies set forth in G.L. c. 138, §§ 2 and 18. The amount of wine produced in Massachusetts is *de minimis* compared to the overall market. See Second Affida of William A. Kelley, Jr., submitted herewith.[1] There are currently only 27 in-state "farm

---

[1] The Second Affidavit of William Kelley demonstrates the interest of the Commonwea in the question of severability and is therefore properly before the Court in support of the Stat Defendants' motion to certify. It may also be considered in opposition to plaintiffs' motion fo

wineries" licensed under G.L. c. 138, § 19B. See id. at ¶ 4. In 2004, these local wineries produced 32, 533 gallons of wine for the Massachusetts market. See id. at ¶ 8. In compariso out-of-state suppliers shipped 14,070,046 gallons into Massachusetts. See id. at ¶ 7. Thus, approximately 99% of the wine sold in Massachusetts comes from outside the State. See id. ¶ 8. Thus, it would be far less disruptive to the State's alcohol regulatory scheme to eliminat the modest exemption currently given to local wineries than to widen the exemption to the va volume of sales detailed above. Meanwhile, in- and out-of-state wineries may continue to ur; the current Legislature to amend existing law on the subject.[2]

Severing the statute in this way will also avoid a significant disruption in the Commonwealth's ability to collect excise taxes on wine. Under Massachusetts law, excise ta: imposed on the manufacture and sale of wine are collected as follows. Local wine is subject t an excise tax which is paid by the winery upon sales within the State. See G.L. c. 138, § 21. Out-of-state wine is subject to the same excise tax, but it is paid by licensed wholesalers upon the importation of the wine into the State. See id.

The severing of existing authority for the direct sale by local wineries was adopted by Court of Appeals for the Fourth Circuit in Beskind v. Easley, 325 F.3d 506 (4th Cir. 2003). Ir that case, the Fourth Circuit found that North Carolina's Alcoholic Beverage Control laws violated the Commerce Clause by discriminating against out-of-state wineries. Id. Rather tha

---

judgment on the pleadings, to the extent that the Court converts the opposition into a motion f( summary judgment.

[2] See Defendants' Motion to Stay Judicial Proceedings (September 2, 2005) (citing legislative proceedings addressing the same issues); Order Granting in Part and Denying in Pa: Motion to Stay (September 13, 2005).

11

strike down the prohibition on the out-of-state wineries that instituted the action, however, th Fourth Circuit eliminated the local preference for in-state wineries. Id. at 519. The Fourth Circuit severed the statute in this way in order to promote "comity and harmony" with the Sta of North Carolina. Id. The court reasoned that eliminating the privilege for in-state wineries rather than authorizing wineries throughout the Nation to ship directly to North Carolina consumers achieved the goal of "disturbing only as much of the State regulatory scheme as is necessary to enforce the U.S. Constitution." Id. The Fourth Circuit acknowledged that its holding "frustrates the plaintiffs' efforts to purchase wine directly from out-of-state wineries to ship wine directly into North Carolina," but the plaintiffs' "right is not to void a law protec by the Twenty-First Amendment but rather to eliminate discrimination in interstate commerce Id. at 520.[3]

Similarly, in this case, Massachusetts maintains a strong interest in exercising its powe to regulate liquor sales, a power recognized by the Twenty-First Amendment. Indeed, Granho reaffirmed both that "States have broad power to regulate liquor under § 2 of the Twenty-first Amendment," Granholm, 125 S. Ct. at 1907, and that they "can mandate a three-tier distributic system in the exercise of their authority under the . . . Amendment," id. at 1892. The Court stated that the "Twenty-first Amendment grants the States virtually complete control over . . . how to structure the liquor distribution system. . . . States may . . . assume direct control of liquor distribution through state-run outlets or funnel sales through the three-tier system. We

---

[3]  But see Dickerson v. Bailey, 336 F.3d 388, 407-409 (5th Cir. 2003) (declining to follov Beskind v. Easley). It appears that in neither Dickerson nor Beskind did the State request certification of the state-law question of severability, though not every State authorizes the practice.

have previously recognized that the three-tier system itself is unquestionably legitimate." Granholm, 125 S. Ct. at 1904-05 (citations omitted). The First Circuit has likewise reaffirme[d] the constitutional basis for the three-tier system. See Wine and Spirits Retailers, Inc. v. Rho[de] Island, 418 F.3d 36 (1st Cir. 2005) ("W & S"). While W & S did not involve a Commerce Clause claim and hence did not directly address Granholm, the First Circuit twice used langua[ge] consistent with the Supreme Court's longstanding rule reaffirmed in Granholm and stated abo[ve.] The First Circuit explicitly referenced States' "power under the Twenty-First Amendment to regulate commercial transactions involving liquor and the organizational structure of the mark[et] in which such transactions take place," W & S, 418 F.3d at 51, reiterating "the State's historic[] right to regulate market forces in the retail liquor industry." Id. at 53.

As discussed above, severing those provisions of the Liquor Control Act that grant a fe[w] local wineries the authority to make direct sales and shipments within the State would be a relatively insignificant intrusion on Massachusetts' alcohol regulatory scheme. On the other hand, the relief plaintiffs request would significantly alter the current regulatory scheme and substantially interfere with the State's ability to regulate and tax the shipment of wine from outside its borders. For these reasons, if the Court reaches the question of severability, it shoul[d] reject plaintiffs' request.

## CONCLUSION

For the foregoing reasons, the State Defendants request that this Court, to the extent it rules the challenged provisions of the Massachusetts Liquor Control Act unconstitutional, certif[y] the question of severability to the Massachusetts Supreme Judicial Court. In the alternative, the State Defendants request that this Court sever the statute so as to eliminate the authority given t[o]

13

in-state farm-wineries to sell and ship directly to consumers and retailers under G.L. c. 138, § 19B, rather than eliminate the current prohibition against direct sales and shipment from wineries located outside the State.

>                Respectfully submitted,
>
>                By their attorneys,
>
>                THOMAS F. REILLY
>                ATTORNEY GENERAL
>
>                /s/ T.A. Barnico
>
>                Thomas A. Barnico, BBO No. 030040
>                David Hadas, BBO No. 641294
>                Assistant Attorneys General
>                Government Bureau
>                One Ashburton Place, Room 2019
>                Boston, Massachusetts 02108
>                (617) 727-2200, ext. 3380
>                tom.barnico@ago.state.ma.us
>                david.hadas@ago.state.ma.us

Dated: September 28, 2005

> CERTIFICATE OF SERVICE
>
> I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 9/28/05.
>
> /s/ T.A. Barnico

14